**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CHARLES EDWARD WILSON,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-0492-CVE-PJC |
| | ) | |
| **STEVE KISS, Chief of Security,**[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner, a state inmate appearing pro se. Respondent filed a response (Dkt. # 6) to the petition and provided the state court record (Dkt. ## 6, 7) for resolution of the claims raised in the petition. Petitioner did not file a reply to the response. For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

### *BACKGROUND*

On March 22, 2010, Tulsa County Sheriff Deputies attempted to serve a felony warrant on Johnny Wilson[2] at a house located at 135 South 36th West Avenue in Tulsa, Oklahoma. Katrina Owens, a resident at the house, opened the door after the deputies knocked and allowed the deputies to enter the home to look for Johnny Wilson. Deputy Lou Marie Randall searched a bedroom where

---

[1] Petitioner is currently in custody at Enid Community Corrections Center where Steve Kiss serves as Chief of Security. See https://www.ok.gov/doc/. Pursuant to Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, the proper party respondent in this matter is Steve Kiss, Chief of Security. Therefore, Steve Kiss, Chief of Security, is substituted in place of William Monday, Warden, as party respondent. The Clerk of Court shall note the substitution on the record.

[2] Johnny Wilson is the son of Petitioner Charles Wilson.

she found Petitioner Charles Wilson sitting on the bed. Wilson told Deputy Randall it was his house. As the deputies looked through the house, they observed several items and products associated with manufacturing methamphetamine. The deputies obtained written and verbal consent to search the residence from Charles Wilson, Owens, and another resident, Gerald Maxey. Although the deputies did not find Johnny Wilson, they found, in Charles Wilson's bedroom, the following items: Coleman fuel, coffee filters, and two bottles hidden in the sleeves of a jacket hanging in the bedroom closet. The bottles had tubing coming out of them and contained a 2-layer liquid. On a nightstand next to Charles Wilson's bed, the deputies found small baggies containing a white powdery residue that field-tested positive for methamphetamine. Also on the nightstand were a prescription bottle and a bill from Oklahoma State University (OSU) Health Care Center, both bearing the name "Charles Wilson."

As a result of those events, Petitioner was charged in Tulsa County District Court, Case No. CF-2010-1178, with Endeavoring to Deliver, Manufacture, or Possess Controlled Drugs (Methamphetamine) (Count 1), and Possession of a Controlled Drug (Methamphetamine) (Count 2). At the conclusion of a jury trial, Petitioner was found guilty as charged. The jury recommended sentences of twelve (12) years imprisonment (Count 1), and seven (7) years imprisonment (Count 2). On August 27, 2012, the trial judge sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively. See Dkt. # 6-1. During trial proceedings, Petitioner was represented by attorney Steven Vincent.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Gail Gunning, Petitioner raised four (4) propositions of error, as follows:

> Proposition 1: Evidence flowing from the warrantless search of Appellant's residence should be suppressed.
>
> Proposition 2: The trial evidence was insufficient to support Appellant's conviction on Count 1.
>
> Proposition 3: The trial evidence was insufficient to support Appellant's conviction on Count II.
>
> Proposition 4: Appellant's sentences are excessive.

(Dkt. # 6-2). On October 14, 2013, in an unpublished summary opinion filed in Case No. F-2012-882, the OCCA rejected Petitioner's claims and affirmed the Judgments and Sentences of the trial court. See Dkt. # 6-3.

Petitioner filed a timely petition for writ of habeas corpus (Dkt. # 1) and raises the same four (4) claims raised on direct appeal. Respondent filed a response (Dkt. # 6) to the petition and asserts that Petitioner is not entitled to habeas corpus relief.

## *ANALYSIS*

### A. Exhaustion/Evidentiary Hearing

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes, see Dkt. # 6 at 2, ¶ 5, and the Court agrees, that Petitioner's claims raised in the petition were presented to the OCCA on direct appeal and are exhausted.

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Cullen v. Pinholster, 563 U.S. 170, 184-85 (2011); Williams v. Taylor, 529 U.S. 420 (2000).

## B. Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 102-03 (2011); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Richter, 562 U.S. at 103); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013). Section 2254(d) bars relitigation of claims adjudicated on the merits in state

courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 98; Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

Here, Petitioner presented his habeas claims to the OCCA on direct appeal. Because the OCCA addressed Petitioner's claims on the merits, the Court will review the cognizable claims under the standards of § 2254(d).

### 1. Fourth Amendment violation (Ground 1)

In his first ground of error, Petitioner alleges that the evidence flowing from the warrantless search of Petitioner's residence should have been suppressed. See Dkt. # 1 at 4. Specifically, Petitioner claims that "[p]hysical evidence seized from the warrantless 'consent' search should [have been] suppressed. Without this physical evidence, there is NO case against Petitioner, and the charges should [have been] dismissed." Id. at 5. Petitioner raised this claim on direct appeal. The OCCA reviewed the record and found that "the trial court did not abuse its discretion in denying the motion to suppress and admitting into evidence the incriminating evidence of a methamphetamine lab found in Appellant's home. The evidence was discovered in response to a search waiver voluntarily given by Appellant and the other residents of the home." See Dkt. # 6-3 at 4.

In Stone v. Powell, 428 U.S. 465, 482 (1976), the Supreme Court held that, where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. The Tenth Circuit has reiterated that a federal habeas corpus court may not overturn a state criminal conviction because of a violation of the Fourth Amendment if the petitioner had a full and fair opportunity to litigate the claim. Brown v. Sirmons, 515 F.3d 1072, 1082 (10th Cir. 2008); Cannon v. Gibson, 259 F.3d 1253, 1261 (10th

5

Cir. 2001); Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992); Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978).

Here, the state courts granted Petitioner a full and fair opportunity to litigate his Fourth Amendment claim. The record reflects that, on November 7, 2011, Petitioner filed a pretrial motion to suppress and argued that the incriminating evidence should have been suppressed because the search waivers were not voluntary. See Dkt. # 6-4. After denial of the motion, a jury found Petitioner guilty as charged. Petitioner appealed and presented his Fourth Amendment claim to the OCCA. On direct appeal, the OCCA found that the district court did not abuse its discretion in denying Petitioner's motion to suppress and admitting the incriminating evidence. See Dkt. # 6-3 at 4.

Because the state courts provided an opportunity for full and fair litigation of Petitioner's Fourth Amendment claim, this Court is precluded from considering the issue raised in Ground 1. See Stone, 428 U.S. at 494; see also Gamble, 583 F.2d at 1165. Therefore, the Court denies habeas relief on Ground 1.

**2. Sufficiency of the evidence (Grounds 2 and 3)**

In Grounds 2 and 3, Petitioner claims that the State presented insufficient evidence to support his convictions. In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (citation omitted). "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citation omitted). The Court "impinges upon 'jury'

discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319 (footnote omitted). The Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (citations omitted).

### a. Evidence supporting Count 1

As his second ground of error, Petitioner challenges the sufficiency of the evidence supporting his conviction for Endeavoring to Deliver, Manufacture, or Possess a Controlled Drug (Count 1). See Dkt. # 1 at 4. Specifically, Petitioner argues that the evidence demonstrated, at most, a "suspicion" that he "may have made an effort to manufacture or aid in manufacturing meth." Id. at 10. On direct appeal, the OCCA found that "[c]ontrary to Appellant's argument, the evidence in this case shows more than a mere suspicion of or close proximity to the illegal conduct. The evidence shows beyond a reasonable doubt that Appellant knowingly and intentionally endeavored to manufacture methamphetamine as alleged in Count I." See Dkt. # 6-3 at 4 (citations omitted).

Under Oklahoma law, the elements of Endeavoring to Manufacture Methamphetamine are (1) knowingly/intentionally, (2) endeavoring, (3) to manufacture, (4) the controlled dangerous substance of Methamphetamine. See Okla. Stat. tit. 63, § 2-401(G); OUJI-CR 6-3B.

During Petitioner's trial, the jury heard Tulsa County Sheriff's Office deputies testify that, in Petitioner's bedroom, they found substances used to manufacture methamphetamine, including Coleman fuel, coffee filters, Epsom salt, and two plastic bottles with tubing coming out of them containing a 2-layer liquid. See Dkt. # 7-1, Tr. Vol. I at 257-58; Dkt. # 7-2, Tr. Vol. II at 314-21. According to Deputy Marlin Warren, those plastic bottles were "HCl gassers" and were "totally used for cooking meth." See Dkt. # 7-2, Tr. Vol. II at 323. In other areas of the house, deputies found

lithium battery strips and pseudoephedrine blister packs. Id, at 311-12, 457. Petitioner testified in his own defense and stated that he did not know where the brown jacket concealing the "HCl gassers" came from. Id. at 521-22.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Petitioner knowingly and intentionally engaged in endeavoring to manufacture methamphetamine. Therefore, the Court concludes the OCCA's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on Ground 2.

### b. Evidence supporting Count 2

As his third proposition of error, Petitioner challenges the sufficiency of the evidence supporting his conviction for Possession of a Controlled Drug (Methamphetamine) (Count 2). See Dkt. # 1 at 12. Petitioner claims that "the trial evidence provided no more than a suspicion Petitioner possessed the baggies & residue forming the basis of Count II, even if the residue were meth." Id. at 14. On direct appeal, the OCCA denied relief, finding as follows:

> Appellant admitted having knowledge and control over other items on his nightstand, therefore it was a reasonable inference that he had such knowledge and control over the methamphetamine found there. Reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime of Possession of Controlled Dangerous Substance as alleged in Count II.

(Dkt. # 6-3 at 6).

Under Oklahoma law, the elements of Possession of a Controlled Dangerous Substance (Methamphetamine) are (1) knowing and intentional, (2) possession, (3) of the controlled dangerous substance of Methamphetamine. See Okla. Stat. tit. 63, § 2-402(A); OUJI-CR 6-6.

During Petitioner's trial, the jury heard deputies testify that they found small baggies containing a white powdery residue on the nightstand beside Petitioner's bed. See Dkt. # 7-2, Tr. Vol. II at 315. A deputy testified that the white residue in the baggies was consistent with the finished product from a meth lab. Id. at 318. In addition, the material found in the baggies field-tested positive for methamphetamine. Id. at 461. Also found on the nightstand were a prescription bottle and a health care receipt both bearing Petitioner's name. Id. at 319. Petitioner testified in his own defense and acknowledged that the bottle of pills found on the nightstand were his and that he kept them on the nightstand. Id. at 520. Petitioner also acknowledged that the bill from the OSU Health Center was his because "it's got my name on it." Id. However, Petitioner claimed he did not know about the baggies of methamphetamine residue found on his nightstand. Id. at 521.

Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that Petitioner knowingly and intentionally possessed methamphetamine. A rational trier of fact could have found that because Petitioner admitted having knowledge and control over the prescription bottle and health care bill found on his nightstand, he also had knowledge and control over the methamphetamine found there. Therefore, a rational trier of fact could have found the essential elements of the crime of Possession of a Controlled Drug (Methamphetamine) beyond a reasonable doubt. The Court concludes the OCCA's decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on Ground 3.

### 3. Excessive sentences (Ground 4)

As his fourth ground of error, Petitioner claims that his sentences are excessive. See Dkt. # 1 at 12. Petitioner explains that, at the time of sentencing, he was sixty-five (65) years old, and

that his "sentence of imprisonment to age (84) and lack of treatment for numerous mental problems, should shock the conscience of this Court." Id. at 16. On direct appeal, the OCCA cited Bartell v. State, 881 P.2d 92, 101 (Okla. Crim. App. 1994), and found that Petitioner's "sentences are not excessive." See Dkt. # 6-3 at 6.

A habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Federal habeas review generally ends "once we determine the sentence is within the limitation set by statute." Id. In this case, Petitioner's sentences were within the sentencing ranges for the crimes charged, as established under Oklahoma law. There is no basis for habeas relief based on the length of sentences received by Petitioner. Habeas corpus relief on Ground 4 is denied.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

### Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court "indicate[s] which specific issue or issues satisfy [that] showing." 28 U.S.C. § 2253. A petitioner can satisfy

the standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citation omitted).

After considering the record in this case, the Court concludes a certificate of appealability should not issue. Nothing suggests that this Court's application of AEDPA standards to the OCCA's decision is debatable amongst jurists of reason. See Dockins, 374 F.3d at 937-38. The Court denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Steve Kiss, Chief of Security, in place of William Monday, Warden, as party respondent.

2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate Judgment shall be entered in this case.

**DATED** this 10th day of May, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE